BOZZO *v.* BOLÍVAR ET AL.

APPEAL from the District Court of San Juan.

No. 54.—Decided January 25, 1906.

PARTNERSHIP—BOND—PARTNERS AS SURETIES FOR PARTNERSHIP.—A partner may become a surety for the same commercial firm of which he is a member, inasmuch as in such cases the firm is considered a distinct person and the contract by which the partner assumes the additional liability of surety is a new contract entirely different and distinct from the contract of partnership.

ID.—AGENT.—Where an agent is authorized to pay and borrow money and execute such public and private deeds as may be necessary therefor, he may also, by virtue of such a clause, bind his principal as surety upon a promissory note.

. The facts are stated in the opinion.

*Mr. Texidor* for appellant.

*Messrs. Acuña and Méndez* for respondents.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This was an action on a promissory note, brought by the plaintiff, Bozzo, against the defendants, Bolívar and others, in which a judgment was rendered on the 16th of March, 1905, in favor of the plaintiff for $3,607.04 with interest and costs. From this judgment an appeal was taken by one of the defendants, Gorgonio Bolívar, on the 8th of May, 1905, and the transcript was filed herein on the 31st of May, following.

The promissory note on which the suit was instituted was signed by the firm of "Bolívar, Arruza & Co., and also by Juan de Arruza, as attorney in fact of Gorgonio de Bolívar, as surety for the firm of which he was a limited partner.

The appeal is based on two grounds.

First. That Gorgonio Bolívar being a limited partner of the firm of Bolívar, Arruza & Co., could not become surety for them and thereby render himself liable for a greater sum than he had contributed to the joint capital.

Second. That Juan de Arruza was not authorized to sign the name of Gorgonio Bolívar as surety to a promissory note, and exceeded his powers in so doing.

In support of the first proposition it is argued that Gorgonio Bolívar by becoming a surety on the note of the firm was contracting with himself, which no man can legally do, and that the sum for which he had made himself liable was fixed at $24,000, in the partnership contract, and that he could not be made liable for a greater sum.

Mr. Bolívar acted for himself, and there is no reason why he could not become surety for the mercantile firm of which he was a partner, since for such a purpose the firm is considered a distinct person, and the contract by which he assumes the additional liability is a new contract entirely different from the partnership contract. Such being the state of the law applicable to such cases there is no valid foundation

for the first objection made by appellant to the judgment rendered against him.

The second question is more serious. Of course, if the attorney in fact had no authority to bind his principal as a surety on a promissory note, this judgment should not have been rendered against Gorgonio de Bolívar, the appellant herein. To determine this matter we must examine the power of attorney under which Juan de Arruza was acting when he signed the name of Gorgonio Bolívar as surety on the promissory note which forms the basis of this action and the judgment from which this appeal is taken.ᐧ Let us read a few extracts from that document which was dated on the 7th of· March, 1894, and was given by Gorgonio de Bolívar to Pedro de Bolívar and Juan de Arruza, jointly and severally. Among other recitals by the notary public before whom it was made as a public document appear the following:

"*He stated:* That by virtue of the character in which he appears, he gives and confers upon Pedro de Bolívar y Alvarez and Juan de Arruza y Urrutia, of this place, jointly and severally, his full power of attorney, in so full, complete and sufficient a manner, as according to law may be required and necessary, to give said power of attorney the fullest force and effect; in order that, in the name and representation of the party executing the power of attorney, and in the capacities indicated, they may exercise the same in the following manner: First, in order that they may manage, govern and administer all the personal and real property, credits and action, which at the present time are possessed by the party appearing, and those which he may acquire in future, selling, ceding transferring, leasing, renting, conveying, exchanging, mortgaging, and persistently defending (*sic*) the same; and acquiring other properties at such prices, and upon such terms and conditions as they may stipulate, executing and accepting the respective deeds and documents, with the legal clauses and requisites necessary to ensure, in the highest degree, the binding force and validity of the same; that they may collect the rents due on the properties of the party executing this instrument, pay the taxes that may be levied thereon, and file complaints at the proper time and place in case said taxes should be excessive.

\*  \*  \*  \* .  \*  \*  \*

"In order that they may lend and borrow money at interest or without interest, on mortgage or without mortgage, demanding and accepting the necessary securities, and executing such public and private documents as may be necessary therefor.

"In order that they may enter into all kinds of commercial and industrial operations, transactions and contracts of any nature whatsoever, stating the same in public or private documents.

❊　　　❊　　　❊　　　❊　　　❊　　　❊　　　″

"And in order that they may generally take and carry into effect all such judicial and extrajudicial measures as may be proper and convenient; as for the principal object as well as for all that may be necessary, incidental, and dependent thereon, the party appearing herein, confers upon them the fullest and most effective power of attorney that they may need, granting to them the free, independent and general exercise of the same; and the party appearing herein binds himself in regard to the aforesaid, to confirm and ratify everything according to law."

This was a most general power of attorney. The powers therein granted were of the amplest nature. It is true that promissory notes are not specifically mentioned nor is anything expressly said about becoming a surety; but the whole instrument shows that, being given by a special partner to the managing partners of the firm in which he was largely interested, to the extent of nearly one-half of the capital, it was intended to enable them to guard and further the interests of the firm, and practically placed at the disposal of the attorney in fact the credit of the principal and all of his property available for mercantile use. If there were no other clauses in the document the second one quoted above authorizing his attorney in fact to lend and borrow money would justify the signature made to the promissory note in question. A man cannot well borrow money, especially, upon a mortgage, without signing a promissory note, and the attorney in fact was authorized to "execute such public and private documents as may be necessary therefor."

In our opinion the power of attorney was ample to authorize the execution of the promissory note sued on and the

appellant was bound by the action of his attorney in fact making the same.

For the reasons stated the judgment of the District Court of San Juan rendered in this cause on the 16th of March last should be in all things affirmed.

*Affirmed.*

Chief Justice Quiñones, and Justice Hernández, Figueras and Wolf concurred.